**Manuel TAVARES, Plaintiff,**

v.

**MICHIGAN FISHING, INC., Defendant.**

**Civil Action No. 95–10682–WGY.**

United States District Court,
D. Massachusetts.

Aug. 20, 1996.

Michael B. Latti, Boston, MA, for plaintiff.

Thomas E. Clinton, Craig R. Nickerson, Boston, MA, for defendant.

## MEMORANDUM AND ORDER

YOUNG, District Judge.

This standard issue Jones Act-unseaworthiness case was, in certain respects, handled by counsel and the Court in a less than stellar manner as a matter of advocacy and trial management. Now that the jury has awarded $214,350.32 in damages to the Plaintiff, Manuel Tavares ("Tavares"), the stakes warrant revisiting the trial.

The Defendant, Michigan Fishing, Inc. ("Michigan Fishing"), moves this Court for a new trial under Fed.R.Civ.P. 59 offering three grounds in support of the motion. In ascending order of difficulty, Michigan Fishing argues first that this Court erred in the latitude it afforded Tavares' counsel in examining the witness Neil Rosen ("Rosen"), the investigator for Michigan Fishing's insurer. Second, Michigan Fishing argues that this Court erred in allowing the admission of certain evidence pertaining to repairs made to the starboard cargo hoist of the F/V Concordia (the "Concordia"), the vessel upon which Tavares suffered his injuries. Finally, Michigan Fishing argues that this Court erred in taking from the jury the calculation of the present value of any damages they might find for Tavares.

### 1. Cross–Examination of Rosen

During the cross-examination of Rosen, Tavares's counsel sought to inquire of him concerning his relationship to Michigan Fishing and its insurers. At side bar, this Court instructed Tavares' counsel that Rosen could be examined concerning "[his] relationship to the interests of [Michigan Fishing]," in order to develop a possible bias on his part, but that he was to stay away from using the word "insurance" because such a reference would be unduly prejudicial and contrary to the public policy interest against

punishing those who insure against risk. *See* Fed.R.Evid. 411. The touchstone of this Court's rulings concerning the cross-examination of Rosen was consistent throughout: Rosen could be examined about any subject tending to show that he had a bias toward Michigan Fishing in the outcome of this litigation, but this examination could not elicit evidence that tended to show that Michigan Fishing was insured against loss. It is this Court's considered opinion that this ruling properly harmonized the requirements of Fed.R.Evid. 411, which prohibits the admission of evidence demonstrating the existence of liability insurance to prove fault, and the development of potential witness bias, which bears directly on a witness's credibility and is a perfectly appropriate function of cross-examination. *See United States v. Ovalle–Marquez*, 36 F.3d 212, 219–20 (1st Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 947, 130 L.Ed.2d 891 (1995).

Having presided over the trial and subsequently reviewed the relevant trial transcript, this Court is satisfied that Tavares' counsel conformed his cross-examination to its dictates. While Tavares' counsel inquired of Rosen concerning his expertise in conducting accident investigations and whether he was employed by any agency that had an interest in Michigan Fishing not having to pay any money in this case, none of the questions he asked nor answers he elicited demonstrated to the jury that Michigan Fishing had insurance to pay for all or part of any potential liability to Tavares. Because the cross-examination objected to did not offend Fed.R.Evid. 411, it does not provide a basis for granting a new trial.

### 2. *Evidence Bearing on Repairs*

On direct examination by defense counsel, Captain Jacobsen ("Jacobsen"), the captain of the Concordia, testified that he was always aware of any repairs done to the Concordia and that no repairs were made to the star-

board cargo hoist during his tenure as captain. Tavares' counsel then offered evidence for the purpose of impeaching this testimony. This Court admitted two items of evidence that pertained to repairs done on the Concordia after Tavares' accident, *viz.* direct witness testimony that such repairs had occurred and an invoice indicating that repair parts had been purchased. Michigan Fishing objected to the admission of both the testimony and the invoice.

■ While the Federal Rules of Evidence prohibit the admission of evidence of subsequent remedial repairs to prove prior negligence, they explicitly allow for its admission for other purposes, such as impeachment. Fed.R.Evid. 407. As this Court earlier had explicitly told defense counsel, the evidence offered by Tavares would not have been admitted had Michigan Fishing chosen not to pursue the line of questioning in which Jacobsen affirmatively stated that no repairs had been done. Once Michigan Fishing advanced such a theory, Tavares had every right to offer evidence to rebut and impeach Jacobsen's testimony.[1]

For these reasons, the Court is convinced that it was not error to admit the evidence concerning repairs and their admission is therefore not grounds for a new trial, particularly given the First Circuit's high standards for granting a new trial. *See Correa v. Hospital San Francisco*, 69 F.3d 1184, 1194 (1st Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 1423, 134 L.Ed.2d 547 (1996); *Veranda Beach Club Ltd. v. Western Sur. Co.*, 936 F.2d 1364, 1384 (1st Cir.1991).[2]

### 3. *Computation of Present Value of Damages*

■ To avoid unnecessary and confusing proof, counsel for both parties asked that the Court give the following charge on the issue of discounting any damage award to present value:

---

1. This Court gave the jury a clear limiting instruction on this very issue. It instructed them that they could only consider the testimony concerning repairs and the invoice itself when assessing the credibility of Jacobsen's testimony and that they could not consider it in determining whether the Concordia was actually seaworthy or whether Michigan Fishing had been negligent.

2. This said, the Court acknowledges that the repair evidence appeared to play a significant role in this case notwithstanding that plaintiff's counsel adhered scrupulously to the Court's limiting instruction. In fairness, were this Court again to be presented with this issue, it would weigh more heavily the principles set forth in Fed.R.Evid. 403. No new trial is warranted here, however.

In the present case, with the approval of the court, the parties have agreed to simplify matters. They have agreed not to call expert witnesses on this subject and have stipulated that I should instruct you as follows:

If you find that plaintiff will sustain a loss of earning capacity in the future as a result of the injury, then in determining what amount you award for future loss of earning capacity, you will proceed in the following way:

First, disregard inflation both in finding future loss of earning capacity and in discounting future loss to present worth. Experience tells us that as an average through many years, generally the interest one may earn by safe and prudent investment of a lump sum of money exceeds inflation by about two percent. Instead of trying to make complex predictions and calculations about the effect of inflation, you are instructed to disregard inflation both in finding future loss of wages and in calculating present value. Instead, you may just predict future loss as you find it would occur under the evidence in this case if wage levels in the future were not affected by inflation. Then apply a two percent discount rate in reducing that future stream of income to present value on the date of verdict.

Stipulated Instruction No. 3, Stipulated Instructions to the Jury Regarding Future Loss of Earning Capacity (Doc. No. 22).

I gave this charge as requested. As is clear from its ambiguity, however, the charge on this issue, as jointly requested and given, is impossible of application. Moreover, I botched the jury instructions in other significant respects. At the side-bar conference following the charge, counsel straightened out my other errors but made no suggestions, observations, or further requests on the issue of discounting to present value.

More perceptive than either Court or counsel, the jury—after some deliberation—asked:

Please explain the 2% discount—is this figured per year or on [the] total amount.

Jury Question # 2, March 14, 1996.

The Court conferred with counsel. Widely divergent views were advanced concerning how to proceed. Recognizing that its instruction to the jury did not provide sufficient "explanation and instruction" as required for a special verdict under Fed. R.Civ.P. 49(a) so as to allow the jury to calculate the present value of a damage award, and reasoning that neither party had earlier objected to the jury instruction on this ground, this Court concluded that both parties had waived the right to trial by jury on the issue of the present value of future lost earnings and instead determined that it would do the calculation itself. Responding to the jury question, this Court instructed the jury that it was merely to indicate what portion, if any, of any damages they might award Tavares was attributable to future lost earnings. The jury did so and this Court, in accordance with Fed.R.Civ.P. 49, calculated the present value of those damages.

Michigan Fishing argues now, as they did at the time, that the jury was confused by the instruction concerning the calculation of damages and that this Court acted improperly in doing the present value calculation itself. Michigan Fishing is correct insofar as they assert that the instruction, to which both parties agreed, did not properly explain how the jury was to calculate the present value of the damages attributable to lost future earnings. Because it failed to do so, the issue was not properly presented to the jury. In such a case, the directive of the Federal Rules could not be more clear: because the instruction did not properly explain the calculation of present value so as to "enable the jury to make its findings upon [the] issue, each party waive[d] the right to a trial by jury of the issue." Fed.R.Civ.P. 49(a). The right to trial by jury having been so waived, this Court was well within its discretion to act as it did.

For the foregoing reasons, Michigan Fishing's motion for a new trial under Fed. R.Civ.P. 59 is ***DENIED.***